# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IBRAHIM ABDUR-RAHIM, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-13-2105 |
| | § | |
| AMEROM, INC., *et al.,* | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is a motion for conditional certification filed by plaintiffs Ibrahim Abdur-Rahim ("Abdur-Rahim") and Hasib Mujezin ("Mujezin") (collectively, the "plaintiffs"). Dkt. 11. After considering the motion, response, reply, and applicable law, plaintiffs' motion for conditional certification (Dkt. 11) is **GRANTED**.

## I. BACKGROUND

This is a Fair Labor Standards Act ("FLSA") case in which plaintiffs allege that the defendants, Amerom, Inc. d/b/a Western Eagle Security ("Western Eagle"), Rim Malak, and Osama "Sammy" Malak (collectively, the "defendants"), failed to pay overtime compensation to security guards classified as employees ("W-2 employees") and others misclassified as 1099 independent contractors ("1099 contractors").[1] Dkt. 11 at 1–2. Abdur-Rahim worked as a security guard for Western Eagle Security from 2010 until May 2013 and was classified as a 1099 contractor. Dkt. 11, Ex. B (affidavit of Ibrahim Abdur-Rahim) at 1–2. Mujezin worked at Western Eagle as a security guard from 2008 until March 2013; defendants classified him as a W-2 employee. Dkt. 11, Ex. A

---

[1] Importantly, while the distinction between employees and independent contractors is ultimately a legal one based on the particular circumstances of each working relationship, the hiring entity makes the initial classification and provides the worker with the corresponding form, whether it be a W-2 for employees or a 1099 for independent contractors, to evidence payment for the work performed. *See Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 190 (S.D.N.Y. 2003); *see also Lewis v. ASAP Land Express, Inc.*, 554 F. Supp. 2d 1217, 1221 n.3 (D. Kan. 2008).

(affidavit of Hasib Mujezin) at 1.  Despite their differing pay classifications, plaintiffs claim that they had very similar duties and Western Eagle exercised similar control over them.  *Id.* at 1–3; Dkt. 11, Ex. B at 1–3.  Abdur-Rahim claims that many other workers, in addition to Mujezin, were classified as W-2 employees instead of 1099 contractors despite having had the same duties as he did.  Dkt. 11, Ex. B at 3 ¶ 7.  Abdur-Rahim thus alleges that defendants' classification of his status as a 1099 contractor was incorrect as a matter of law.  *Id.*

On August 30, 2013, plaintiffs moved for conditional certification of a representative class of Western Eagle security guards who worked more than 40 hours per week but were not paid proper overtime wages.  Dkt. 11.  Defendants responded, arguing that conditional certification was unwarranted because the plaintiffs are not similarly situated with other security guards who are paid differently for different responsibilities.  Dkt. 18.  Plaintiffs filed a reply in support of their motion, claiming that the disparities raised by defendants are insufficient to preclude conditional certification.  Dkt. 19.  The motion is ripe for disposition.

## II. Legal Standard

Section 7(a) of the FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours.  29 U.S.C. § 207(a).  Section 16(b) creates a cause of action against employers who violate the overtime compensation requirements.  *Id.* § 216(b).  This section also permits an employee to bring suit, referred to as a "collective action," against an employer on "behalf of himself . . . and other employees similarly situated."  *Id.*  Unlike a class action under Federal Rule of Procedure 23, however, workers must "opt in," rather than "opt out," by filing with the court a written consent to become a party to a collective action.  *Id.*

Although the Fifth Circuit has declined to adopt a specific test to determine when a court should conditionally certify a class, most federal courts (including this court) have adopted the *Lusardi* test when deciding these issues. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995) (discussing the test applied in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), declining to adopt a specific standard, and finding no abuse of discretion when district court applied the *Lusardi* test), *overruled on other grounds*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90–91, 123 S. Ct. 2148 (2003); *Badgett v. Tex. Taco Cabana, L.P.*, No. H-05-3624, 2006 WL 2934265, at **1–2 (S.D. Tex. Oct. 12, 2006). Under the *Lusardi* test, the court answers the question of whether the potential plaintiffs are "similarly situated" through a two-stage analysis. *Mooney*, 54 F.3d at 1213.

The two stages of the *Lusardi* test are the "notice stage" and the "decertification stage." *Badgett*, 2006 WL 2934265, at *1. At the notice stage, the court makes a decision, usually solely based on the pleadings and any submitted affidavits, whether to certify the class conditionally and give notice to potential class members. *Id.* The decision is made using a "fairly lenient standard," because the court often has minimal evidence at this stage of the litigation. *Id.* At the notice stage, "courts appear to require nothing more than substantial allegations that putative class members were together the victims of a single decision, policy or plan. . ." *Mooney*, 54 F.3d at 1214 n.8 (internal quotation marks omitted). Notice does not issue unless the court conditionally certifies the case as a collective action. *Maynor v. Dow Chem. Co.*, No. G-08-504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008). If the district court conditionally certifies a class and authorizes notice, putative class members are notified of their opportunity to opt in as plaintiffs under 29 U.S.C. § 216(b). *Mooney*, 54 F.3d at 1214. The action then proceeds as a representative action during discovery.

*Badgett*, 2006 WL 2934265, at *1. During the "decertification stage," the court reexamines the class, usually on motion by the defendant, after notice has issued, an opt-in period has concluded, and discovery is largely complete. *Id.* at *2. If the court finds the class is no longer made up of similarly situated persons, it may decertify the class and dismiss the opt-in plaintiffs without prejudice. *Id.* If the class is still similarly situated, the court allows the action to proceed. *Id.*

The instant case is at the notice stage. While the notice standard is lenient, certification is not automatic. *Id.* The plaintiff bears the burden of making a preliminary factual showing that a similarly situated group of potential plaintiffs exists. *Id.*; *see also Hall v. Burk*, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002) (stating that "[u]nsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden"). A court may deny conditional certification "'if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.'" *Maynor*, 2008 WL 2220394, at *5 (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)). However, the court "need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." *Id.* at *7 (quoting *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007)).

## III. ANALYSIS

### A. Conditional Certification

Plaintiffs argue that the court should conditionally certify a class of security guards who, like them, worked for Western Eagle over the past three years without proper overtime pay. Dkt. 11 at 10–13. Plaintiffs acknowledge certain distinctions among the security guards, including specific pay

rates and responsibilities, but they claim that these distinctions are immaterial and not a bar to notice to potential class members. *Id.* at 11–12.

In response, defendants allege that plaintiffs are not similarly situated with other security guards for several reasons: (1) the plaintiffs' and other guards' differing status as W-2 employees and 1099 contractors; (2) the various duties across the proposed class; (3) the differing salaries for commissioned and non-commissioned security guards; and (4) the lack of a single decision, policy or plan which victimized plaintiffs and other security guards. Dkt. 18 at 3.

After considering the arguments from both sides, the court finds that plaintiffs have presented enough evidence of similarity among plaintiffs, both current and prospective, for conditional certification of a class of security guards who worked for Western Eagle without proper overtime pay over the past three years. Though plaintiffs and other guards have different classifications as W-2 employees and 1099 contractors, these classifications are chosen by Western Eagle and may be arbitrarily assigned rather than being based on the economic realities present in the working relationship. *See Ansoumana*, 255 F. Supp. 2d at 190.

Further, the fact that plaintiffs and prospective class members had different salaries and did not perform exactly the same duties does not prevent them from being considered similarly situated. A finding of similarity does not require a showing of identical duties and working conditions across the entire group. *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008). Instead, it requires a minimal showing that all members of the class are *similarly* situated in terms of job requirements and payment practices. *Id.* Plaintiffs' affidavits state that they both worked for Western Eagle as security guards. Dkt. 11, Ex. A at 2; Dkt. 11, Ex. B at 2. While not conclusive,

this shared job title suggests that they have similar job duties and obligations.  Moreover, opening gates and foot patrol are similar in that they are both performed by guards to secure a site.  In terms of similar payment practices, plaintiffs' affidavits state that defendants failed to give proper overtime compensation to plaintiffs and other Western Eagle security guards.  *Id.*  The alleged failure to pay overtime compensation to all security guards is a common policy which, if true, uniformly victimized the putative class.  Plaintiffs are similarly situated with other security guards, and the court finds that plaintiffs have met their burden for conditional certification.

### B.  Notice

Defendants next object to the substance and distribution of plaintiffs' proposed notice, alleging that the notice itself is coercive and misleading, and its distribution is "unlimited."  Dkt. 18 at 4.  However, the wording of the notice is not "coercive" and contains clear language that joining the class is voluntary.  Second, concerning the alleged "unlimited" nature of the notice, the court has conditionally certified this class knowing that salaries and work locations may differ among putative plaintiffs.  This does not prevent them from being similarly situated and entitled to notice.

Lastly, plaintiffs request the production of "the names and all known addresses, phone numbers and email addresses for all class members."  Dkt. 11 at 16.  However, at the notice stage, this court has generally restricted the defendants' production to the names and addresses of potential plaintiffs, and the court will do likewise in this case.  *See, e.g.*, *Lopez v. Bombay Pizza Co.*, No. H-11-4217, 2012 WL 5397192, at *3 (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).  Defendants must produce the names and addresses of all putative class members, insofar as that class has been defined by this order.

### IV. CONCLUSION

Plaintiffs' motion for conditional certification (Dkt. 11) is **GRANTED**.  It is further

**ORDERED** that, within fourteen (14) days from the entry of this order, defendants are to provide

to plaintiffs, in both hard-copy and computer-readable format, the full names and last known

addresses for the following class of persons:

> All individuals who at any time from July 17, 2010 to present suffered or were
> permitted to work as security guards for the benefit of Western Eagle and were not
> paid overtime.

It is further **ORDERED** that the notice used shall be in plaintiffs' proposed form, with two

exceptions: (1) the Arabic number 60 shall be replaced with the Arabic number 90 in the second full

paragraph of page 2 of the notice to correspond with the preceding term "ninety"; and (2) the

language regarding the court's authorization on page 3 of the notice shall be amended to reflect that

notice was authorized by the undersigned instead of Judge David Hittner.  *See* Dkt. 21, Ex. C.

Plaintiffs' counsel shall send, at its own expense, the notices via first-class mail after defendants

have complied with this order.  The notices shall include a notice of consent and a self-addressed

stamped return envelope.  Each potential plaintiff will have ninety (90) days from the postmark date

of the notice sent by plaintiffs' counsel to file his or her consent with the court.

It is so **ORDERED**.

Signed at Houston, Texas on November 19, 2013

_____
Gray H. Miller
United States District Judge

7